THE STATE, GEORGE C. JOHNSON, PROSECUTOR, v. THE MAYOR AND COUNCIL OF THE BOROUGH OF ASBURY PARK.

1. The act of March 22d, 1895, entitled "An act to amend an act respecting licenses in the boroughs of this state" (*Gen. Stat.*, p. 279) expressly authorizes ordinances imposing license fees for revenue purposes and legalizes ordinances adopted for that purpose.

2. The title of the act sufficiently expresses its object in compliance with the constitutional requirements. The object sought in the end which the legislative act purposes to accomplish, and not the details provided to reach that end, is all that is required in the title of the act.

3. Nor does the act violate that constitutional provision which forbids special or local laws in that it applies only to boroughs.

4. The division of municipalities into cities, towns, townships and boroughs being a classification permitted by the constitution for the purposes of local government, the powers to be conferred upon these bodies severally which pertain to the ordinary functions of local government must rest in legislative discretion.

5. The constitutional provision which requires property to be assessed for taxation by uniform rules, according to its true value, does not apply to the legislative power of indirect taxation upon privileges, franchises, trades and occupations by exacting license fees for the privilege of transacting business, though such power be exercised for revenue purposes.

On *certiorari* to remove an ordinance of the borough providing for licensing certain trades, occupations and business.

Argued at November Term, 1895, before Justices DEPUE, VAN SYCKEL and GUMMERE.

For the prosecutor, *R. T. & W. B. Stout, Claude V. Guerin* and *Alan H. Strong.*

For the defendants, *Hawkins & Durand* and *Collins & Corbin.*

The opinion of the court was delivered by

DEPUE, J.   This writ brings up for review an ordinance of the borough of Asbury Park relating to licenses approved

May 7th, 1895. The first section ordains that it shall not be lawful for any person to pursue any occupation or business therein mentioned within the limits of Asbury Park unless he shall first obtain a license for such privilege and pay a license fee therefor as thereinafter mentioned.

The prosecutor is a butcher, carrying on business within the limits of Asbury Park, soliciting orders for and delivering meat with a wagon drawn by one horse. The section of the ordinance which relates to his business is section 5, which is in these words : " That the owners of each and every grocer, butcher, baker, oyster, fish, clam, milk, kindling wood, photographer, dry goods, furniture, lumber, brick, coal, builder, stone, cabinetmaker, hawking or peddling wagons and ' all other soliciting or delivery wagons not herein particularly specified,' engaged or used within the limits of the borough of Asbury Park for the purposes of soliciting orders or for delivering goods, wares or merchandise of any kind, drawn by two horses, shall pay to the mayor and council a license fee for said privilege of fifteen dollars for each and every wagon so used and employed ; and a license fee of ten dollars for each and every butcher, grocer, baker, oyster, fish, clam, milk, kindling wood, photographer, dry goods, furniture, lumber, brick, coal, builder, stone, cabinetmaker, hawking or peddling wagons drawn by one horse, so used and employed ; and any person or company violating the provisions of this section or any part hereof shall on conviction thereof forfeit and pay to this borough the sum of one hundred dollars."

The language used in drafting this section and the collocation of words and sentences in it are not felicitous, but the object and purpose of the ordinance are sufficiently expressed. The object of this section is to subject to the payment of license fees the owners of the vehicles named for the privilege of transacting their business within the borough limits.

The ordinance fixed the license fees at such a sum as to indicate a taxation for revenue purposes. It was adopted in virtue of an act of the legislature entitled "An act to amend an act respecting licenses in the boroughs of this state."

*Gen. Stat.*, *p.* 279. This act, in express terms, empowers the municipal authorities of boroughs to pass ordinances " to license and regulate the owners or drivers of all vehicles used in connection with any business or occupation for the purpose of soliciting orders or delivering goods within the limits of the municipality," and to fix the license fees therefor which may be imposed " for the purpose of revenue," and also to fix and prescribe penalties for the violation of any such ordinance in a sum not less than $10 nor more than $100. It is unnecessary to discuss the limitation on the amount of license fees that may be exacted by ordinance adopted under the police power of regulation. *North Hudson Railway Co.* v. *Hoboken*, 12 *Vroom* 71, 78. The act above referred to expressly authorizes ordinances imposing license fees for revenue purposes, and legalizes ordinances adopted for that purpose. *Flanagan* v. *Plainfield*, 15 *Vroom* 118; *Morgan* v. *Orange*, 21 *Id.* 389; *Haynes* v. *Cape May*, 23 *Id.* 180. The penalty named in the ordinance for transacting business without taking out a license is also within the power conferred by the act. *Haynes* v. *Cape May*, *supra*.

The title of the act of 1895 sufficiently expresses its object in compliance with the constitutional requirements. The title is "An act respecting licenses in the boroughs of this state." The object sought in the end which the legislative act purposes to accomplish, and not the details provided to reach that end, is all that is required in the title of the act. *Walter* v. *Town of Union*, 4 *Vroom* 350.

Nor does the act violate that constitutional provision which forbids special or local laws in that it applies only to boroughs. The act of 1878 (*Gen. Stat.*, *p.* 179), which authorizes the formation of boroughs, is a general act for the formation of a minor form of municipal government, which may be resorted to by the inhabitants in any locality throughout the state having the area of territory and population designated by the act. The powers conferred upon these municipalities by the act are different from the powers possessed by other municipalities, such as cities, towns and townships, and in almost

every department of local government a different scheme of government is provided for. The classification which put boroughs into a class by themselves, for the purposes of legislation, has been decided to be a legitimate classification, and the act of 1878, which authorizes the formation of boroughs and prescribes the powers of government to be exercised by such municipal bodies, has been held to be constitutional. *State* v. *Borough of Clayton,* 24 *Vroom* 277. The act of 1895 is, in legal contemplation, only an amendment of the twelfth section of the act of 1878, which gives power to pass ordinances for licensing or prohibiting certain trades, occupations and business.

Cities of the first class are authorized to exact license fees for cars run on street railroads, a power which is not granted to other cities or other municipalities, and the power to demand such license fees is given by an act which expressly authorizes such license fees for the purpose of increasing the revenues of the city. *Pamph. L.* 1882, *p.* 247. In all cities power is given to require a license by bill-posters, with license fees which the act declares may be levied and collected for the purpose of revenue, a power withheld from towns, townships and boroughs (*Pamph. L.* 1882, *p.* 24; *Pamph. L.* 1894, *p.* 221); and cities as a class are authorized to exact license fees for shows and athletic exhibitions, which could not be justified under mere police powers. *Pamph. L.* 1890, *p.* 360. An examination of the many statutes relating to cities of the several classes, towns, townships and boroughs will disclose diversities in the power granted to these several municipal bodies which, if tried by the criterion proposed by counsel in this case, viz., that no reason can be given for granting certain special powers to one class of municipalities and withholding them from other classes, would operate disastrously upon the system of municipal government in force in this state. The division of municipalities into cities, towns, townships and boroughs being a classification permitted by the constitution for the purpose of local government, the powers to be conferred upon these bodies severally which pertain to

the ordinary functions of local government must rest in legislative discretion. The act of 1882 (*supra*), which authorizes cities of the first class to license the running of street cars and exact therefor license fees for revenue purposes, was declared to be unconstitutional; but the decision was placed expressly upon the ground that the ratio of population adopted was to be ascertained by the last preceding census of the United States. *Pavonia Horse Railroad Co.* v. *Jersey City,* 16 *Vroom* 297. But the power to legislate for cities as a class, and therefore for towns, townships or boroughs as a class, in such matters as usually pertain to local municipal government, is too well settled to admit of dispute at this time. *New Brunswick* v. *Fitzgerald,* 18 *Id.* 479, 487; *S. C. on error,* 19 *Id.* 457, 486; *Randolph* v. *Wood,* 20 *Id.* 85, 92; *In re Cleveland,* 23 *Id.* 188; *State* v. *Borough of Clayton, supra.*

It was also contended that the act of 1895 was in violation of that constitutional provision which requires property to be assessed for taxation by uniform rules according to its true value. *Art. IV., subd.* 7, ¶ 12. The franchises of a corporation, which are quite a different thing from the right of an individual to carry on business, are taxable as property; and when subjected to that form of taxation, the method by which the tax is laid must conform to the constitutional mode of taxing property. But this constitutional prescription does not apply to the legislative power of indirect taxation upon privileges, franchises, trades and occupations by exacting license fees for the privilege of transacting business, though such power be exercised for revenue purposes. *Standard, &c., Co.* v. *Attorney-General,* 1 *Dick. Ch. Rep.* 270, 273; *Pipe Line Co.* v. *Berry,* 24 *Vroom* 212; *State Board* v. *Central Railroad Co.,* 19 *Id.* 146, 347.

The penalty prescribed by the ordinance for transacting business without obtaining a license is within the sum named in the act of 1895 and may be lawfully exacted. *Haynes* v. *Cape May, supra.* Nor is the ordinance unreasonable in its discrimination, in the amount of the license fees, between

business transacted with a wagon drawn by one horse and with a wagon drawn by two horses.

There being no legal infirmity in the ordinance it should be sustained.