## INVALID PROVISIONS OF THE MOTOR VEHICLE LAW.

Common Pleas Court of Franklin County.

CHARLES C. JANES AND THE OHIO STATE AUTOMOBILE COM-
PANY V. CHARLES H. GRAVES, SECRETARY OF STATE.

Decided, December, 1913.

*Constitutional Law—Regulations for the Use of Highways by Motor
Vehicles—Fees for Police Surveillance—Excise Tax for Use of
Roads.*

1. Sections 6294 and 3609 (6309) being part of an act to regulate the
use of motor vehicles as a police measure are invalid for the rea-
son that the amount of license fee exacted constitutes an attempt
to impose a tax for revenue for general state purposes.
2. Article II, Section 16, and Article XII, Section 5, of the Constitution,
are vital and essential in their provisions as applied to a single
legislative enactment which seeks to exercise both the power of
police regulation as well as that of taxation for revenue, and when
essential to mark off the boundaries of legislative power, should be
regarded as mandatory, at least that applying to taxation measures.
3. The regulation of motor vehicles by the act in question converts
what would otherwise be a common right into a privilege upon
which the Legislature may impose an excise tax for the use of
the highways by motor vehicles. Such tax is subject to the limita-
tion that the amount thereof shall be the reasonable value of such
use, privilege and enjoyment. A reasonable tax may, therefore, be
imposed upon the use of highways by motor vehicles for the repair
and maintenance of such highways. The imposition of a tax
such as will create a large surplus beyond what is considered to
be the reasonable value of the use, privilege and enjoyment of the
highways and what should be reasonably contributed by the owners
of such vehicles for the repair and maintenance of the highways,
so as to raise a fund for the state general revenue and to make up
deficiencies arising therein, violates the constitutional provision
respecting the quality of protection and benefit to the people.

*C. D. Saviers* (Columbus), *H. L. Gordon* (Cincinnati) and
*R. H. Lee* (Cleveland), for plaintiffs.

*Timothy S. Hogan,* Attorney-General, and *James M. Bougler,*
Special Counsel, for the State.

KINKEAD, J.

This case involves the validity of the amendment made to the motor vehicle law, passed at the last session of the Legislature. It is now submitted on final hearing involving the merits of the whole case. The claim that the law is valid because the tax imposed is an excise tax has been so strongly urged that the court has given the power to impose police regulation and to exact a tax careful consideration. The substantial changes made in the law by the last amendment consisted in the increase of the fees to be paid by owners of motor vehicles for the privilege of operating them. The fees are graduated according to horse-power; the claims of the parties were sufficiently set out in the original opinion (15 N. P. [N. S.], 17). The additional fact developed by the evidence on final hearing, which is vital to the question, is that the defendant drew the amended bill, that he made an estimate of the probable revenue that would be realized from the increased fees for the year 1914, and furnished the same to the Governor. It is clearly established that the whole purpose of the amendment was to raise revenue. That a tax is imposed is conceded by the defendant, the claim of justification therefor being that it is an excise tax levied under constitutional right. It is important to note that by the application of well settled rules of statutory construction the court may look to the circumstances existing at the time of the amendment; it may also consider general facts of common knowledge and other legislation on the subject of revenue (36 Cyc., 1136). It is to be noted that the changes in legislation concerning the liquor traffic created a material decrease of state revenue. Resort was therefore made to the existing motor vehicle law to raise additional revenue to make up that deficiency. The fees for registration were increased according to horse-power, and two-thirds of the surplus derivable from such tax was made a part of the general revenue of the state. One-third of such surplus, instead of all as before, was to be expended on the roads.

In support of the right to impose an excise tax, reliance is placed upon the amendment to Article XII of the Constitu-

tion and Section 10 thereof, which provides that: "Laws may be passed providing for excise and franchise taxes, and for the imposition of taxes upon the production of coal, oil, gas and other minerals." It is doubtful whether this added anything to the existing power of the Legislature to assess an excise tax. It certainly did not so far as this case is concerned. But whether it does or not is immaterial because the right to exact an excise tax in a proper case clearly exists. The necessity of resort to this species of taxation did not arise until the material growth of the state made it necessary to seek other fields for raising revenue. The problems of dealing with the evils resulting from the liquor traffic, the legislation and adjudications dealing therewith presented an anomolous situation in the field of license and taxation. The power of taxation is searching in extent, reaching every trade, occupation, business, industry, as well as privilege, use or enjoyment, constantly and intimately touching all relations of life. Its only limitation is *necessity* which in the field of taxation "knows no law," save the absolute need of raising revenue from legitimate sources within constitutional limitations. But when the Legislature embarks upon a legitimate scheme of taxation, it must do so in a proper manner. It can not do it *indirectly* or *incidentally* to some other legitimate object and purpose, as when in the exercise of police power. Legal distinctions names and divisions are not only essential for the sake of philosophy, logic and reason, but for the protection of rights and to keep the Legislature within its powers as well. It is not consistent with reason, logic or justice for the Legislature to enter the field of police regulation and to impose a tax by the single exaction for both purposes, because the fund realized may be unjustly applied as is the case in the law in question. Taxation is one vital purpose and object of government, while police regulation is another. The proper exercise of either power may not be readily and truly judged when both are improperly pursued in one law, which makes it impracticable if not altogether impossible to apportion and apply the fund within constitutional limitations. For in such effort, as in the law in

question, it is difficult to determine with logical precision where the exercise of one power ends, and the other begins. The Legislature possesses both the power to impose police regulation and to exact an excise tax. But it will be difficult to mark off the lines of power, perceiving the end of one and the beginning of the other, with such degree of exactness as to guard individual right and properly judge the propriety of the exercise of each. So therefore, the Constitution wisely demands that but one purpose should be pursued at a time by a legislative act, especially so in one imposing a license fee for police purposes, or one exacting a tax for revenue. Certain rules have been formulated by means of which the propriety of the exercise of either may be determined. The constitutional requirements that an enactment of the Legislature should contain but a single subject instead of two, and that every tax law should state the object of the same to which only it shall apply (Art. II, Section 16, Art. XII, Section 5) were not mere idle ceremonial requirement. These constitutional exactions had distinct and practical purposes in view; they are vital and essential in a case like the one under consideration. Though the first may be, as is held, merely directory, and though non-compliance therewith be not fatal to a law in some instances, still the requirement stands as a monument to logical distinction and accurate analysis, and when essential to mark off the boundaries of legislative power, should be regarded as mandatory. Earlier opinions to the effect that the uniformity clause of the Constitution applies only to property tax (*Ashley* v. *Ryan*, 49 O. S., 524; *Adler v. Whitbeck*, 44 O. S., 565) are entirely sound because the nature of an excise tax is to single out a class, but there has been no occasion so far as the reports disclose for the consideration of the requirement that a tax law shall state its object and the application of the fund to a case such as is presented here. There has not been sufficient resort to the field of excise taxation to afford opportunity for a consideration of this question.

I am of the opinion that Section 5 of Article XII furnishes the governing principles for all laws levying taxes for general

revenue purposes. That is the reasonable and true conception of the constitutional limitation upon the right to impose any kind of tax either upon property or in the form of an excise for the purpose of producing general revenue. Discriminating care must be used in citing and following judicial precedent. If we fail in this duty, or if we follow it without care and discrimination, violence may be done the cause of justice. I do not believe the expressions found in opinions rendered many years ago in dealing with the old question of imposing a license tax on the liquor traffic should have weight on the applicability of this provision of the Constitution to an excise tax. It is essential to keep separate the power of police regulation and the power to tax for revenue purposes. Combined exercise of both in the production of a surplus fund beyond the reasonable cost of police regulation, and transcending as well the reasonable value of protection and benefit derived from a privilege conferred by the state is beyond the power of the Legislature. The limits of the power to prescribe police regulation for the general welfare or public safety are definitely defined, beyond which the Legislature may not go without transcending the right to legislate on that subject. It can not pass beyond the scope of police power, and enter the field of taxation for revenue purposes without transgressing the power of police regulation. The two objects—that of police regulation, and that of taxation for revenue—can not be pursued in one legislative act with safety and due regard to private right, because the Legislature loses its power to impose police regulations the moment it passes beyond the point of regulation and undertakes to raise revenue for general purposes of governmental administration and makes it possible to abuse legislative power. This doctrine so well expounded by the learned Ranney in *Mays* v. *Cincinnati,* 1 O. S., 268, and followed so universally everywhere ever since, marks the boundary of the exercise of police power, limiting it to the reasonable cost incurred in the supervision of the regulatory processes of the power. That a fund so exacted and created should incidentally increase the revenue would be immaterial. But

such a principle can not be applied to a case like this, where the surplus beyond the point of regulation is expressly created for purposes of revenue.

An excise tax is an imposition laid upon a proper subject for the express purpose of raising revenue for general purposes. And the settled rule of limitation in its exercise is that the value and amount fixed by legislative power must not exceed the reasonable value of the franchise or privilege (*Southern Gum Co.* v. *Laylin,* 66 O. S., 578). To add to a police regulation a tax for revenue, makes it impossible to properly adjust and distribute the proportionate part of the fund realized to the cost and expense of the regulation and the portion which should be applied to the general expenses of government. This makes it difficult, if not altogether impossible, for the Legislature to keep within the province of its respective powers. This consideration is a complete demonstration of the wisdom of holding the requirement of the Constitution that tax laws shall distinctly state the object thereof and how the fund shall be applied, to be mandatory, especially in such a case as the one at bar. We hold that it is. The application of the fund derived from a license fee or tax may only be applied in the cost of the necessary police regulation, while the fund derived from taxation may be extended for general purposes. The result of such disposition of funds finds practical illustration in this case. The actual cost of imposing the police regulation does not exceed from $60,000 to $100,000, while the surplus beyond such cost ranges from $300,000 to a million dollars. This is proof that a police regulation is converted into a tax measure. That this can not be done is so axiomatic that it is useless to extensively cite authority. One may turn to Longsdorf's Notes and find how frequently *Mays* v. *Cincinnati* has been followed and approved. Special attention is called to the latest leading case in the state on the subject of license, *Marmet* v. *State,* 45 O. S., 63. This was cited and followed in the later case of *Great Atlantic, etc., Co.* v. *Village,* 85 O. S., 120.

That the law in question is primarily a police measure, that its express and paramount object and purpose in police regula-

tion in the interest of the public welfare and safety, is so apparent as to be beyond the possibility of successful contradiction. Several reasons may be offered in support of this statement. The strongest and most conclusive is that the Supreme Court in *Allen* v. *Smith* 84 O. S., 283, has held it to be a police measure.

The language of Justice Spear is particularly forceful touching the character of the law as a police measure:

"The act in ques'on partakes of a twofold nature. Some of its provisions come purely within the domain of the police power; other within the general legislative power, while others partake of both characteristics. It is a remedial act, intended, in the first instance, to regulate the use of automobiles, and to provide for the safety of others who are lawfully using the public highways. Why should they not be regulated, and why should not the old fashioned user of the highway be protected by the law? Doesn't everybody know that the automobile is a new machine of travel; its use a new use of the highway; that it is dangerous to other travelers; that its power, its capacity for speed, the temptation it affords the reckless driver to operate it at a reckless rate and in a careless manner, all distinguish the automobile from all other vehicles. Surely it can not be necessary to further elaborate this fact so patent to every observing and reading person. The automobile is, therefore, a class by itself, the users of such machines a class by themselves and legislation in recognition of this condition is based upon a solid, easy recognized distinction."

It seems unnecessary to further elaborate upon the clear character of the law as a police measure. Still it is so essential that this paramount feature of the law shall be the index of its validity that some further matters may be mentioned. The title of an act is "A key to open the minds of the makers of the act, and the mischiefs which they intended to redress" (*Income Tax. Comrs.* v. *Pemsel* (1891), A. C., 531; 36 Cyc., 1132). "The purpose of our statute appears from its title * * * and although it is said that the title forms no part of the act (1 Ld. Raym., 77) yet the reason of this dictum appears to be the practice of Parliament by which the title is prefixed to the statute at the discretion of the clerk, * * *

but such is not the practice with us. The title is framed in the same manner as the bill, and is sanctioned by the vote of both branches of the Legislature. We may, therefore, consider it as explanatory of the object of the law" (*Burgett* v. *Burgett*, 1 Ohio, 469). The right and duty of the court to consult the title in determining the meaning of a statute is clearly settled (*State* v. *Pugh*, 43 O. S., 113; *State* v. *Bolden*, 107 La., 119; 90 Am. St., 280; *Rushville* v. *Gas Co.*, 132 Ind., 582; 15 L. R. A., 321). The title may be a guide to the intention of the law makers. *White* v. *Lincoln*, 5 Neb., 515; *Garrigus* v. *Park Co.*, 38 Ind., 71; 36 Cyc., 1133.

The original act was passed April 2d, 1906 (96 O. L., 320), and was entitled, "An act to compel owners and operators of motor vehicles to register with the Secretary of State." The fee was $5 for each machine, the power of which did not exceed 30; in excess of 30 in addition to the $5 fee, $3 for each and every ten horse power over 30 was imposed. The fees were to be expended for the actual construction of improved roads. It was again amended May 9th, 1908, and entitled; "An act to provide for the registration, identification and regulation of motor vehicles" (99 O. L., 538). It is an indicative fact that in this amendment the graduated fees were omitted and the fee for gasoline motor was fixed at $5, and $3 for an electric. And the *revenues* derived from the *registration-fees* were to be "maintained as a separate fund for the improvement, maintenance and repair of the public roads." There was an amendment March 12, 1909 (100 O. L., 73), and the last one now under consideration was April 28, 1913 (103 O. L., 763). The only material change made by the present law was the increase of fees and the disposition of the fund by silently leaving two-thirds of the surplus in the general revenue fund without other application of the same.

The conclusion must be that the primary and paramount purpose and object of the law is that of police regulation, and as such, its validity must be determined. The purpose of the amendment to raise revenue is to be regarded as incidental to that of police regulation. The rule to be applied, therefore, is

that because the exaction for the purpose of regulation is so far in excess of the necessary expenses of registration and of the police regulation provided by law which the state must bear, that it must be considered the incidental imposition of a tax for revenue (*Mays* v. *Cincinnati,* 1 O. S., 268). This case has been followed in *State* v. *Kleetzen,* 8 N. D., 290; *Bruner* v. *Mun. Corp.,* 8 N. P., 307; *Pleuler* v. *State,* 11 Neb., 561; *St. Paul* v. *Treager,* 25 Minn., 252; 33 Am. Rep., 462; *State* v. *Boyd,* 63 Neb., 831; 58 L. R. A., 108; *St. Louis* v. *Insurance Co.,* 47 Mo., 153; *Adams Exp. Co.* v. *Owensboro,* 85 Ky., 268; *State* v. *Irey,* 42 Neb., 189.

Authorities are numerous that a license fee must be invalid when so excessive as to be an abvious exercise of the power of taxation. Whenever it is manifest that the amount of such tax imposed in the exercise of police power is substantially in excess of the reasonable expense of issuing a license and regulating the occupation to which it pertains * * *, the act or ordinance imposing the tax is invalid. *Ft. Smith* v. *Ayers,* 43 Ark., 82; *Duckwell* v. *New Albany,* 25 Ind., 283; *Ottumwa* v. *Zekind,* 95 Ia., 622; 58 Am. St., 447; *State* v. *Rowe,* 72 Md., 548; *State* v. *Finch,* 78 Minn., 118; 46 L. R. A., 437; *Jackson* v. *Newman,* 59 Miss., 375; 42 Am. Rep., 367; *Springfield* v. *Jacobs,* 101 Mo. App., 339; *State* v. *Angelo,* 71 N. H., 224; *State* v. *Moore,* 113 N. C., 697; *Muhlenbrink* v. *Commrs.,* 42 N. J. L., 364; 36 Am. Dec., 518; *People* v. *Jarno,* 19 N. Y. App. Div., 466.

The regulation concerning the sufficiency of brakes and alarm devices, lights, speed, duty when meeting horse drawn vehicles to stop as well as when an accident occurs, prescribing penalties for failure to conform to the requirements as to registration and the other regulations, are the objects of police power. The service rendered by the arm of state government provided by this law has to do with the registration alone. A very much smaller fee than is now imposed will be adequate to cover these expenses. If there is anything to be imposed for the regulation beyond this, it must have to do with the police regulation which falls within the jurisdiction of the local police officers. And there is nothing of this kind to be found in the law.

The line of demarcation between the limits of police regulation and the purpose of the imposition of an excise tax, finds apt illustration in the suggestion just made. In assessing a license fee, or license tax as it is sometimes called, it may be large enough to recompense the government for the additional burden, trouble and expense in regulating the dangerous agency for the public welfare. On the other hand, an excise tax has for its primary and sole purpose the raising of general revenue. And its limitation is marked by the value of the franchise or privilege granted by the government. If the license tax goes beyond the reasonable expense of regulation so as to disclose a manifest purpose to raise revenue, the law is invalid. If the excise tax goes beyond the reasonable value of the privilege, use and enjoyment granted by the state so as to infringe upon the principle of equal protection and benefit, the same is invalid.

For the reasons stated it is clear and beyond doubt that that part of the law which undertakes to raise revenue and to make disposition thereof, renders the law invalid and unconstitutional as an exercise of police power.

We now give special attention to the claim made on behalf of defendant of the right to impose an excise tax upon the privilege of using the highways for motor vehicles. It seems essential to express our views upon this question for the purpose of demonstrating, if we can, how the right to exercise the power of imposing an excise tax can not be made in the manner in which the Legislature has clearly undertaken to do. We have been more than pleased with the discriminating care and attention given the task by counsel for defendant in this case. His insistence has driven the court to consider closely the question sufficiently to perceive and conclude that an excise tax may be levied in a case like this in addition to the imposition of a regulation fee. We feel like remarking, however, that counsel have not explored the bed rock of logic and reason of the intrinsic facts of the case, aside from precedent, to sufficiently demonstrate the propriety of the exercise of the right to impose an excise tax in the manner in which it has been attempted. We believe that the conclusion which we have arrived at con-

cerning the exercise of this right, and the reasons stated therefor, is an advance step in the field of judicial opinion, although there have been two or three judicial interpretations along this line without statement of the principles upon which it is founded. *Mark* v. *District of Columbia,* 37 App. D. C., 563; 37 L. R. A., 440; *Bozeman* v. *State,* 61 So., 604 (Ala., 1913). See also *Clearly* v. *Johnston,* 74 Atl., 538 (N. J., 1909); *Kane* v. *Titus,* 80 Atl., 453 (1911, N. J.); *City* v. *Kersey,* 64 N. E., 469; 159 Ind., 300; *Ruggles* v. *State,* 87 Atl., 1080.

For years past we have not been in the habit of dealing with an excise tax except when levied upon a particular business or occupation, or upon franchises granted by the state. We have never had occasion to consider the applicability of the principles of excise taxation to a privilege which is the outgrowth of an essential police regulation, such as is present in this case. The power to impose taxes is unlimited except by certain constitutional guaranties that tend against oppression and unreasonableness. It is searching in extent. It reaches every trade or occupation; every object of industry as well as *use* or *enjoyment.* It constantly and intimately touches all relations of life through the exactions made under it. It rests upon necessity and is inherent in every sovereignty, although it is included in the general grant of legislative power (Cooley Const. Lim., 6th Ed., 587). The power to tax is the one great power upon which the whole governmental fabric is based. Its exercise is not to be measured by microscopical or mathematical precision, nor are theoretical notions to be lightly advanced to invalidate a tax. Taxation is practical, and is to be regarded in its actual, practical results (*Ingwerson* v. *U. S.,* 107 U. S., 509, 514). As the power rests upon necessity, the Legislature is to be governed by the principle. The necessities of one period and its conditions may not be the criterion for another time and different conditions and necessities. We realize that to permit governments to grow and prosper and to properly meet new conditions, the fundamental law must receive a construction and be interpreted in the light of new conditions and necessities. In this spirit we approach the right claimed in

this case of the Legislature to impose a tax upon the use and privilege of enjoyment of the public highways of the state by owners of motor vehicles. We think the Legislature has the right to impose an excise tax upon the *use* and *enjoyment* of the highways by owners of motor vehicles, and the *privilege* of running and operating the same thereover. This right of the Legislature may be based upon necessity arising from this new and more dangerous and destructive use of the highways and need of more constant repair and improvement so that these enjoying this privilege may do so to the fullest extent. It may be based on the practical fact and result that because such use is peculiarly burdensome on the purse of the local township, county and state which should be proportionately relieved by contribution from owners of motor vehicles of their proportionate share and for their benefit, protection and enjoyment. It may be based upon the fact that this new use is also a burden on the adjacent land owner—the farmer—who pays a tax on a different basis, making it equitable for the owner of the motor vehicle to contribute his equitable proportion as to that class of tax-payers. It may be based upon a necessity created by the new use of the highways by the owners of motor vehicles themselves, full and complete enjoyment of which use and privilege makes good roads essential and of more importance than ever. Goods roads can not be had without money. And it is one of the plainest principles which should be forged in the common shop of justice and made part of the taxing power, that every one using and enjoying a thing of public necessity should contribute his equitable proportion of the cost of maintaining such necessity which is to his peculiar advantage, protection and benefit. The judicial vision is not to be obstructed by precedent which seems to prevent a step forward whenever this is essential for the general welfare. In one instance, for example, a vehicle tax had been imposed on the use of vehicles, the purpose of which was to raise a fund to improve the streets. This was held to be illegal because it was taxation of a common right. Later a constitutional amendment was made authorizing the imposition of a wheel tax. This was held to be applicable

to the automobile, though it was not a use made of the streets when the tax was imposed. It was considered that after the amendment to the Constitution what was before a common use, was converted into a privilege, which was subject to a tax. See *Chicago* v. *Collins,* 175 Ill., 445; 67 Am. St., 224; *Berry, Auto.* Section 87; *Harders F. P. Co.* v. *City,* 235 Ill., 508; *Ayers* v. *City,* 239 Ill., 237.

We should give the provision of the recent amendment to the Constitution such interpretation as will embrace the *use,* and *privilege of enjoyment* of the highways by owners of motor vehicles within its contemplation, and authorize an imposition of an excise tax thereunder for such privilege, use and enjoyment. The admitted necessity for police regulation is conclusive evidence and argument that what would otherwise have been a common right, is now to be regarded under such regulation as a privilege governed by the limitations therein prescribed. Owners of motor vehicles only have the right and privilege to use the highways when they have complied with this law. The state having granted them the right and privilege of using the highways, it may therefore exact for such use and privilege a fair and reasonable recompense in the form of an excise tax, such as will reasonably cover the fair value thereof.

We are fully aware that it is a grave and delicate duty devolved upon the judicial branch of government to invalidate a revenue measure; such an act should not be lightly or unadvisedly set aside. If it is plainly antagonistic to the Constitution, it is the duty of the court to so declare (*Ingwerson* v. *U. S.,* 107 U. S., 509, 514). "The power of taxation can not extend beyond what is for common or public welfare, and the equal protection and benefit of the people; but the ascertaining and fixing of such values rests largely in the General Assembly, but finally with the courts" (*Southern Gum Co.* v. *Laylin,* 66 O. S., 578, 595). So in a case like this an excise tax imposed upon a use or enjoyment of a privilege of the highways by owners of motor vehicles should not transcend or go beyond the reasonable value thereof. To tax such right or privilege for purposes clearly beyond and foreign to its exercise, such

as is attempted to be done by the law in question, is prohibited by the Constitution because in denial of equality of protection and benefit. Such right or privilege may fairly and reasonably be required to contribute to its enjoyment to the extent of the use which involves the repair and maintenance of the public highways. To go beyond the equal protection and benefit of owners of motor vehicles in the use of the highways or in the protection given them by any law by the imposition of an excise tax for the purpose of adding to the revenue for general expenses of government is foreign to the purpose of an excise tax in such case. That it is in denial of the equal protection and benefit principle contained in the Constitution is ably and conclusively established in *Southern Gum Co.* v. *Laylin, supra,* viz.:

"But upon the power to tax privileges and franchises there is no express limitations in the Constitution, but certain limitations upon that power must be implied from other provisions of the Constitution so as to make the whole instrument harmonious and consistent throughout. The Constitution was established to 'promote our common welfare' (preamble of the Constitution). Government is instituted for the equal protection and benefit of the people (Section 2 of the Bill of Rights). Private property shall ever be held inviolate but subservient to the public welfare (Section nineteen of the Bill of Rights). These provisions of the Constitution are implied limitations upon the power of taxation of privileges and franchises, and limit taxation of the reasonable value of the privilege or franchise conferred originally, or to its continued value from year to year. * * * These limitations prevent confiscation and oppression under the guise of taxation, and the power of such taxation can not be extended beyond what is for the common or public welfare, and the equal protection and benefit of the people; but the ascertaining and fixing of such values rests largely in the General Assembly, but finally in the courts."

By the application of the foregoing constitutional principles to the attempt made in this case, as part of a license fee regulation, to impose an excise tax, transcends the legislative power. The imposition of a tax to such an extent that a large surplus will be accumulated, one-third of which may be considered to

be the reasonable value of the privilege, and two-thirds of which is to be applied to another and different purpose, having no special relation to the benefit, violates the constitutional provision respecting equality of protection and benefit to the people.

We are finally of the opinion and find accordingly that Sections 6294 and 3609, which was intended to be 6309, are invalid and unconstitutional on the grounds and for the reasons stated in the opinion.

Section 6301 is a proper exercise of the right of excise taxation and is a valid provision. It includes a tax on a manufacturer or dealer in motor vehicles and upon the occupation of a chauffeur.

Under the views herein expressed it is within the power of the Legislature by a separate and proper act, and in obedience to the constitutional requirement applying to the passage of a taxation act, to impose an excise tax upon the use, privilege and enjoyment of the highways by owners of motor vehicles, in addition to the police regulation fee, and subject to the limitation that the amount of the tax shall be the reasonable value of the use, privilege and enjoyment.

An order of permanent injunction may be drawn against the defendant enjoining him from collecting the amount of money as provided in Section 6294 and of making disposition thereof under 3609, or as intended, 6309.